UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONICA LEVITZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-3929 |
| | § | |
| ALICIA'S MEXICAN GRILLE, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants'[1] motion to dismiss under the doctrine of judicial estoppel. Dkt. 15. Plaintiff Monica Levitz did not respond. Having considered the complaint, the motion, and the applicable law, the court finds that defendants' motion (Dkt. 15) should be **DENIED IN PART** and **GRANTED IN PART**.

**I. BACKGROUND**

This is an employment discrimination and retaliation case. Levitz was employed by defendants from February 2017 until her termination on May 8, 2018. Dkt. 1 ¶¶ 3.4, 3.14. During that time, Levitz claims that she was discriminated against on the basis of her gender, race, and religion. *Id.* ¶ 3.7. Levitz also claims that she was terminated in retaliation for complaining about this discrimination. *Id.* ¶ 4.5. Additionally, she claims that her former employer gave a "false, negative job reference to one or more of Levitz's prospective employers" in further retaliation for her complaining of discrimination. *Id.* Levitz sued defendants on October 9, 2019, alleging

---

[1] Defendants are Alicia's Mexican Grille Inc.; Alicia's Mexican Grille 2 Inc.; Alicia's Mexican Grille 3 Inc.; Alicia's Mexican Grille 4 Inc.; Dario's Restaurant Inc.; Galiana Bakery, Inc.; Grupo Herrera Restaurant Inc.; Marvino's Restaurant, Inc.; and David Herrera.

discrimination and retaliation under Title VII and Section 1981, as well as tortious interference with prospective business relations. *Id.* at 8–10.

Defendants move to dismiss these claims under the doctrine of judicial estoppel, arguing that Levitz failed to disclose them during her chapter 7 bankruptcy case, which she filed more than six months after termination of her employment with defendants. Dkt. 15. Levitz filed for bankruptcy on December 20, 2018, in the U.S. Bankruptcy Court for the Southern District of Texas under Cause No. 18-37142. *Id.* ¶ 3. In her bankruptcy petition, Levitz indicated that she had two "contingent and unliquidated claims" totaling $20,500.00. *Id.* One of these claims was for "DENIED UNEMPLOYMENT," and the other was for "DEFAMATION AGAINST FORMER EMPLOYER." *Id.* Defendants argue that because the petition "did not identify any claims under Title VII or Section 1981, nor any for tortious interference," Levitz should be judicially estopped from bringing these claims now. *Id.* Levitz did not file a response to defendants' motion.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Local Rule 7.4 provides that "[f]ailure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4 (2019). However, the "mere failure to respond to a motion is not sufficient to justify a dismissal with prejudice." *Watson v. U.S. ex rel. Lerma*, 285 F. App'x 140, 143 (5th Cir. 2008) (citing *Johnson v. Pettiford*, 442 F.3d 917, 919 (5th Cir. 2006) (unpublished). The court must still consider the substance of the motion. *See, e.g.*, *Waggoner v. Deutsche Nat'l Bank Tr. Co.*, 181 F. Supp. 3d 445, 448 (S.D. Tex. 2016) (citing *Ramsay v. Bailey*, 531 F.2d 706, 709 n.2 (5th Cir. 1976) ("The Fifth Circuit has held, however, that a proper sanction for a failure to respond to a dispositive motion is for the court to decide the motion on the papers before it."). Moreover, on a motion to dismiss, the court must "accept all well-pleaded facts as true

2

and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). This plausibility standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

**B.     Judicial Estoppel**

"Judicial estoppel is 'a common law doctrine by which a party who has assumed one position *in his pleadings may be estopped from assuming an inconsistent position.'*" In re Coastal Plains*, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). The doctrine was created *not* for the protection of litigants, but to protect the judiciary itself "by 'preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Id.* at 205 (quoting *Brandon*, 858 F.2d at 268). Accordingly, "[t]he doctrine is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Where judicial estoppel is raised in the context of a bankruptcy case, federal law applies. *Id.* at 205.

3

Judicial estoppel is appropriate where "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citing *Coastal Plains*, 179 F.3d at 205–06). "However, judicial estoppel is not governed by 'inflexible prerequisites or an exhaustive formula for determining [its] applicability,' and numerous considerations 'may inform the doctrine's application in specific factual contexts.'" *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

## III. ANALYSIS

### A. Levitz's Post-Termination Retaliation and Tortious Interference Claims Are Not Inconsistent with Defamation

Defendants argue that Levitz's Title VII, Section 1981, and tortious interference claims should be barred because Levitz "clearly represented to the bankruptcy court that the only pending claims [she] had were for defamation and denied unemployment, and that the total amount of those claims did not exceed $20,500.00." Dkt. 15 ¶ 9. According to defendants, this "failure to disclose meets the first prong of the judicial estoppel analysis," *id.*, which requires that plaintiff's position in separate proceedings be "clearly inconsistent." *Coastal Plains*, 179 F.3d at 206. It is true that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe*, 412 F.3d at 600. However, defendants' argument that Levitz failed to disclose all the claims she is asserting in her complaint is not as straightforward as defendants make it seem.

4

To start, all of the cases that defendants cite are ones in which plaintiffs either failed to disclose any claim at all, or indicated that any claim they had was barred. In *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004), married plaintiffs "represented that they had *no* pending or potential lawsuits," despite the husband sustaining personal injuries in a shipping accident more than a year earlier. *Id.* at 333 (emphasis added). While their bankruptcy petition was pending, they filed a personal injury lawsuit and failed to amend their bankruptcy filings. *Id.* When they finally disclosed the lawsuit to their creditors, six months after the fact, they "inaccurately informed the creditors that the suit was prescribed." *Id.*

Similarly, in *Coastal Plains*, an equipment distributor debtor failed to disclose that it had claims of up to $10 million against its former supplier. 179 F.3d at 203. In *Jethroe*, the debtor filed an EEOC charge eight months *prior* to filing her bankruptcy petition, yet indicated she had *no* contingent or unliquidated claims. 412 F.3d at 599–600. In *Rushforth v. Bank of Am. Nat'l Ass'n*, the debtor completely failed to disclose his FLSA overtime claims, which he had known about for twenty months prior to filing for bankruptcy. No. 4:11-CV-0035, 2011 WL 13135606, at *1 (S.D. Tex. June 26, 2011), *report and recommendation adopted*, No. 4:11-CV-0035, 2011 WL 13135607 (S.D. Tex. July 13, 2011). In *Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012), the debtor filed an EEOC charge and complaint *while in bankruptcy*, yet "affirmatively stated 'NONE'" when required to identify contingent and unliquidated claims, only belatedly disclosing the claim to the bankruptcy court after his former employer moved to judicially estop his discrimination suit. *Id.* at 260–61. Finally, in *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993), the debtor failed to "even vaguely refer to" hundreds of millions of dollars in claims it had against defendants, whom it alleged were directly responsible for its bankruptcy, having conspired against Payless. *Id.* at 571. Each of these cases is distinguishable from Levitz's case, where

5

her post-termination retaliation and tortious interference claims are rooted in facts that might also give rise to a defamation claim.[2]

There are four elements to defamation in Texas: "(1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019). In her bankruptcy petition, Levitz said she had a "CLAIM FOR DEFAMATION AGAINST FORMER EMPLOYER." Dkt. 15-1 at 16. In her complaint, Levitz claims that she suffered post-termination retaliation when a potential employer "told Levitz that he had been told by Dianna Herrera (the wife of Ubaldo Herrera who worked in the office at Grupo Herrera) that Levitz was fired for taking intellectual property and that they had pending litigation against her." Dkt. 1 ¶ 3.16. Levitz alleges that "[n]either of those statements are true." *Id.* Moreover, she alleges that "Defendants knowingly gave a negative, false job reference to the prospective employer." *Id.* ¶ 5.5. These facts, which the court must accept as true at the pleading stage, are consistent with a claim for defamation.

These facts would also form part of the basis of Levitz's post-termination retaliation and tortious interference claims. "'A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.'" *Brazoria Cty., Tex. v. E.E.O.C.*, 391 F.3d 685, 692 (5th Cir. 2004) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997)). Because Title VII covers former employees, a negative reference may constitute an adverse employment action. *Robinson v. Shell Oil*

---

[2] The same cannot be said for Levitz's retaliatory termination, discrimination, and harassment claims. *See infra* at 8.

*Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 849, 136 L. Ed. 2d 808 (1997). Accordingly, the facts alleged by Levitz that might give rise to a defamation claim might also constitute an adverse employment action, as required for her post-termination retaliation claim.

Relatedly, to prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish

> (1) there was a reasonable probability that [she] would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). Here, the facts Levitz alleges that would give rise to a defamation claim would also satisfy at least the second and third elements of a tortious interference claim as well.

Judicial estoppel is "not intended to eliminate all inconsistencies, however slight or inadvertent." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358, 362 (3d Cir. 1996). The standard is that "the position of the party against which estoppel is sought is *plainly inconsistent* with its prior legal position." *Jethroe*, 412 F.3d at 600 (emphasis added). Because the facts that Levitz has alleged that would give rise to a defamation claim would also satisfy the adverse employment action element of her post-termination retaliation claim, as well as the conscious desire and independently tortious elements of her tortious interference claim, the court cannot find that Levitz's disclosure of a claim for defamation against her former employer is "plainly inconsistent" with the post-termination retaliation and tortious interference claims she asserts now.

7

This finding is bolstered by the fact that Levitz signaled to the court that her claim was potentially worth more than $10,500.00 when she exempted "100% of fair market value" of this claim in Schedule C. *See* Dkt. 15-1 at 18. Where the debtor exempts "'100% of FMV,' the debtor is stating that regardless the value in-fact at any time, he is asserting such full value as his exempt interest." *In re Salazar*, 449 B.R. 890, 897 (Bankr. N.D. Tex. 2011). "Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset." *Schwab v. Reilly*, 560 U.S. 770, 793, 130 S. Ct. 2652, 2668, 177 L. Ed. 2d 234 (2010). With regard to Levitz's bankruptcy petition, the record shows no objection by the trustee.[3] Thus, it can hardly be said that Levitz was "'playing fast and loose with the courts to suit the exigencies of self interest.'" *Coastal Plains*, 179 F.3d at 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). Accordingly, defendants' motion to dismiss under the doctrine of judicial estoppel (Dkt. 15) should be denied as it pertains to the post-termination retaliation and tortious interference claims discussed above.

**B.    Levitz's Remaining Claims Are Inconsistent with Defamation and Thus Estopped**

Having decided that Levitz's post-termination retaliation and tortious interference claims are not inconsistent with the defamation claim she listed in her bankruptcy petition, the court finds that Levitz alludes to other claims in her complaint that *are* factually and legally unmoored from any potential defamation claim. First, to the extent that Levitz asserts a claim of retaliatory termination

---

[3] "'A court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom.'" *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 249 n.3 (5th Cir. 2006) (quoting *Missionary Baptist Found. of Am. v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983)).

(Dkt. 1 ¶ 4.5), that claim *is* estopped because it has nothing to do with the allegedly false, negative job reference given to her prospective employer following her termination. That she was allegedly terminated in retaliation for complaining about discriminatory treatment was a fact known to Levitz at the time she filed her bankruptcy petition, yet it was not alluded to in any way. There is simply no connection between denied unemployment benefits or defamation and being terminated in retaliation for complaining about discrimination. Thus, defendants' motion (Dkt. 15) is granted insofar as Levitz purports to assert a claim of retaliatory termination.

Levitz also alleges that she "suffered damages as a result of the unlawful harassment and discrimination." Dkt. 1 ¶ 4.3. These claims stem from non-personalized comments such as "women were not as good as men" and "whites and blacks could not work as well as the Hispanics in the restaurants," and profane statements to Levitz such as "'c-nt'" and "'b-tch,'" and "that Levitz did not know 'what the f-ck' she was doing." *Id.* ¶¶ 3.8, 3.9. While these remarks, when uttered in the employment context, could potentially give rise to a discrimination or harassment claim, in the context of defamation, they are constitutionally protected opinions. *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs., Local 450*, 8 F. Supp. 3d 896, 912 (S.D. Tex. 2014) ("[S]tatements of opinion cannot constitute defamation as a matter of law."). Levitz was aware of these facts at the time of her bankruptcy petition, but did not allude to any claim that could potentially arise from them. Therefore, defendants' motion (Dkt. 15) should be granted as to Levitz's retaliatory termination, discrimination, and harassment claims.[4]

---

[4] Levitz also alleges that defendants violated federal immigration laws, Texas Alcohol and Beverage rules, the Fair Labor Standards Act, and COBRA. Dkt. 1 ¶¶ 3.11–3.13, 3.15. The court does not reach the question of whether a cause of action exists under these laws or is related to the bankruptcy petition because defendants do not address these allegations in their motion. Dkt. 15.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Dkt. 15) is **DENIED IN PART** and **GRANTED IN PART**.

Signed at Houston, Texas on February 11, 2020.

_____
Gray H. Miller
Senior United States District Judge